**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| THE MUHLER COMPANY, INC.,                )<br>                                                                )<br>                    Plaintiff,                              )<br>                                                                )<br>vs.                                                         )<br>                                                                )<br>PLY GEM HOLDINGS, INC.; PLY GEM   )<br>INDUSTRIES, INC.; PLY GEM WINDOW )<br>GROUP; AWC HOLDING COMPANY;      )<br>ALENCO HOLDING COMPANY; MWM  )<br>HOLDING, INC.; MW MANUFACTURERES, )<br>INC.; MW WINDOWS & DOORS; GREAT )<br>LAKES WINDOWS,                                  )<br>                                                                )<br>                    Defendants.                         )<br>                                                                ) | **Civil Action No.:** _____<br><br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff, The Muhler Company, Inc. ("Plaintiff"), by and through its attorneys and for its Complaint against Defendants states and alleges as follows:

1.      Plaintiff is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Charleston, South Carolina.

2.      Defendant Ply Gem Holdings, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its headquarters and principal executive offices located in Cary, North Carolina.

3.      Defendant Ply Gem Industries, Inc. is a corporation, organized and existing under the laws of the State of Delaware, with its headquarters and principal executive offices located in Cary, North Carolina. Defendant Ply Gem Industries, Inc. is a wholly owned subsidiary of Ply Gem Holdings, Inc.

4.      The Board of Directors Ply Gem Holdings, Inc., and Ply Gem Industries, Inc. are identical.

5. Defendant AWC Holding Company is a corporation organized and existing under the laws of the State of Delaware.  Defendant AWC Holding Company is a wholly owned subsidiary of Ply Gem Holdings, Inc.

6. Defendant Alenco Holding Corporation d/b/a Alenco Windows or Alenco is a corporation organized and existing under the laws of the State of Delaware.  Defendant Alenco Holding Corporation is a wholly owned subsidiary of AWC Holding Company.

7. Defendant MWM Holdings, Inc. is a corporation organized and existing under the laws of the State of Delaware.  Defendant MWM Holdings, Inc. is a wholly owned subsidiary of Ply Gem Industries, Inc.

8. Defendant MW Manufacturers, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its corporate headquarters located in Rocky Mount, Virginia.  Defendant MW Manufacturers, Inc. is a wholly owned subsidiary of MWM Holdings, Inc.

9. Defendants hold themselves out as the Ply Gem Window Group.

10. Defendants are de facto joint venturers in the Ply Gem Window Group.

11. At all times relevant herein, Defendants were acting in their own behalf and/or as agents of the other members of the group.

12. Defendants have been operating in such a manner that their legal distinction is blurred  and they are also almagated as a single entity and/or are the alter ego of each other.

13. Defendant Ply Gem Holdings, Inc. owns and/or controls the remaining Defendants.

14. The Defendants knew or should have known about intentional acts of deceit and unfair competition set forth herein.

**JURISDICTION AND VENUE**

15.     Plaintiff's claims arise under the Lanham Act, 15 U.S.C. § 1116, *et seq.*; S.C. Code Ann. §§ 39-5-10, *et seq.*; and the common law of the State of South Carolina. This court has jurisdiction over this action pursuant to 15 U.S.C. §§ 1116 and 1121; and 28 U.S.C. §§ 1332,1338 and 1367.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Furthermore, the events giving rise to the cause of action described herein occurred in whole, or in part, in the District of South Carolina and the acts complained of continued to occur and are ongoing in the District of South Carolina.

**FACTS**

17.     Plaintiff is in the business of supplying and installing new and replacement windows primarily in residences in Charleston County, South Carolina and in neighboring coastal counties in South Carolina.

18.     Defendants are in the business of manufacturing and supplying new and replacement windows in Charleston County, South Carolina and in neighboring, coastal counties in South Carolina.

19.     Defendants are leading manufacturers of residential exterior building products in North America.

20.     Plaintiff and Defendants are direct competitors in the business of supplying new and replacement windows in Charleston County, South Carolina and in neighboring, coastal counties in South Carolina (the "Market").

21.     Defendants hold themselves and their brands out as providing customers with a partnership on which they can build a business. Defendants further represent that they have comprehensive product lines that offer aesthetic and value options for any type of project,

national distribution and sales support, local trusted relationships - just the strategy today's construction professional needs to grow and prosper.

## **MISLABELING BY DEFENDANTS – DESIGN PRESSURE**

22.     The American Architectural Manufacturers Association ("AAMA") is the source of performance standards and product certification for the fenestration industry.  Since 1936, the goal of the AAMA has been to develop standard test methods and performance specifications for the fenestration industry in order to protect customers by providing them a basis for an "apples to apples" product comparison.

23.     Since 1962, AAMA Certification, the original third-party window performance program, has provided manufacturers with the means to independently demonstrate product performance to their customers.

24.     One such test method and performance specification is the AAMA 101 Performance Rating of a window, commonly referred to in the industry as Design Pressure rating ("DP" or "DP Rating") of a window.  This testing method has become the nationally accepted standard.  Defendants are bound by such standard.

25.     The stringent AAMA Certification Program procedures are intended to assure customers that the products selected, when installed properly, match the quality of the sample product tested.  The AAMA Certification label on a window tells a customer that:

        a. A sample of the unit passed required performance tests for resistance to air leakage, water penetration and wind pressure;

        b. Performance tests were conducted in the presence of an independent AAMA accredited lab technician;

        c. The manufacturer has certified that production line units are built to the same specifications as the sample unit that was tested; and

    d. Manufacturing plant production lines, component inventory, and quality control records are checked annually through two surprise inspections by an independent third-party validator.

26. The AAMA Certification Program is one of several programs in the window and door industry that requires that components used in the finished window assembly passes its own set of performance tests.

27. A DP rating is a measure of the structural durability of a window, as well as a measure of air and water infiltration. A higher DP rating indicates that the window is more pressure resistant and less prone to "blow outs" by exposure to high wind conditions.

28. Regulations regarding DP requirements of an exterior window were codified in the 2000, 2003, 2006 and 2009 International Residential Code ("IRC") and the 2000, 2003, 2006 and 2009 International Building Code ("IBC")[1].

29. Charleston County, like many coastal counties has adopted the IRC, IBC and other related codes and regulations, as its own residential and commercial building codes. The IRC and IBC impose more stringent specifications for components in coastal regions, in part, due to the severe weather and climate conditions that are common along the coast, especially regarding excessive moisture and wind.

30. Pursuant to the IRC, IBC and other related codes and regulations, as adopted and applied in Charleston County and other coastal counties, windows installed in any building must be designed and constructed to withstand specific wind loads.

31. The IRC requires that exterior windows, such as those manufactured and sold by the Defendants in the Market, shall be tested by an approved independent laboratory and bear the

---

[1] When IRC, IBC or any other code, statute or regulation are referenced herein, Plaintiff intends to refer to all versions of these codes, statutes or regulations, including but not limited to years 2000, 2003, 2006 and 2009.

label identifying manufacturer, performance characteristics and approved inspection agency to indicate compliance with AAMA/WDMA/CA 101/I.S.2/A440.  *See* Section R613.4.

32.     The AAMA 101 Certification Program is accredited by the American National Standards Institute ("ANSI").

33.     The DP rating for a window is determined pursuant to architectural/engineering testing as adopted by the American National Standards Institute (ANSI), the American Architectural Manufacturers Institute (AAMA), and the American Society for Testing and Materials (ATSM), among others, and provides performance information for air infiltration, water penetration, structural wind load, and forced entry resistance.

34.     Windows with higher DP ratings are less likely to fail under high wind pressure than those with lower DP ratings.  Therefore, installing windows with the proper DP rating for the region is a vital life, health and safety issue.

35.     The Defendants market that the higher the DP rating on a window, the higher the performance quality of the window.

36.     A third party inspection agency such as the National Accreditation and Management Institute, Inc. ("NAMI") and Keystone Certification, Inc. are responsible for testing the structural integrity of windows and providing products with certified DP ratings.  These third party inspection agencies test data and provide inspections at the manufacturers' site to insure the materials and procedures used are the same as tested.

37.     AAMA labels are then purchased through the inspection agency (or printed by the manufacturer) and affixed to the windows by the manufacturer.  This label disclosing the actual test rating allegedly certified by the third party entity is placed inside either the sill head or the window

38. The information on the labels identifies the windows and is intended to be applied to only that window.

39. In addition, local code enforcement agencies expect that the DP rating of a window is clearly displayed on a sticker on the glass surface. The labeling on the window stickers is typically in a format that does not comply with AAMA 101 and, therefore, the applicable building code referencing AAMA 101, and is inherently misleading.

40. The AAMA Certification Program and its familiar Gold Label are required by federal, state and municipal building codes and administrators as an indication of product quality to builders, dealers, and building and home owners. Given the value of the AAMA Gold Label, some manufacturers have been known to use imitation labels. To protect those companies who've passed the required rigorous testing within its certification program quality assurance system, AAMA offers its online Certified Products Directory, which catalogs all products currently authorized for certification through the AAMA program and the companies that manufacture them. Defendants' windows, which purport to bear a valid and accurate AAMA label are included in the Certified Products Directory.

41. The clear and correct labeling of windows is critical, particularly in coastal regions because of the danger of life-safety concerns that are present when lower rated windows are installed in buildings.

42. Upon information and belief, Defendants have in the past and currently are marketing the following windows as having a DP rating of 50:

        a. Series 1111 Vinyl Single Hung;
        b. Series 1111S Vinyl Single Hung;
        c. Series 1111NS Vinyl Single Hung;
        d. Series 1101S/1101NS Vinyl Single Hung;
        e. Series 1101 Vinyl Fixed;
        f. Series 1111-2 Twin Vinyl;
        g. Series 1115S Vinyl;

7

        h.  Ply Gem's Builder Series 600 Vinyl Clad;
        i.  MW Freedom 600; and
        j.  Such other and further windows as can be shown through discovery and at the trial of this matter.

43.    Defendants have in the past and continue to do so by placing large stickers on the surface of the glass specifically identifying the above listed and possibly other windows as having a DP rating of 50, when, in fact the windows are certified by, inter alia, NAMI as having a lower DP rating. As an example, these misrepresentations are evident on the following windows:

    a.  Defendants manufactured and sold an Alenco Series 1111S/1111NS Vinyl Single Hung window and represented that the window had been tested in accordance with AAMA/NWWD 101/I.S.2-97. The label on the face of the window bearing an Alenco logo represents that the window has a Design Pressure of +50/-50. However, the testing documents supporting the NAMI label placed on the window shows the Design Pressure as +40/-50. This is a blatant misrepresentation of the window's design pressure. This window was sold and installed in a home in the Market and the window does not meet the design pressure represented thereon, thus potentially posing a life-safety issue. This misrepresentation by Defendants is an unfair and deceptive trade practice engaged in by Defendants in order to gain a competitive advantage in the marketplace. *See* Exhibit "A".

    b.  Defendants manufactured and sold an Alenco Series 1111S/1111NS Vinyl Single Hung window and represented that the window had been tested in accordance with AAMA/NWWD 101/I.S.2-97. The sticker on the face of the window bearing an Alenco logo represents that the window has a Design Pressure of +50/-50. However, upon information and belief, the testing documents supporting the NAMI label placed on the window shows the Design Pressure as +40/-50. This is a blatant misrepresentation of the window's design pressure. This window was sold in the Market and the window does not meet the design pressure represented thereon, thus potentially posing a life-safety issue. This misrepresentation by Defendants is an unfair and deceptive trade practice engaged in by Defendants in order to gain a competitive advantage in the marketplace. *See* Exhibit "B".

44.    Additionally, upon information and belief, Defendants made and continue to make representations to consumers through various media outlets, including but not limited to

trade journal, consumer-oriented magazine, the Internet and through distributors, that their windows had/have a DP rating of 50.

45. Upon information and belief, Defendants have also manufactured and supplied other windows with a stated rating of DP 50 in the Market, knowing that the window tested to a lower DP rating, in contravention of applicable building codes. Such practices create a significant life-safety risk and are unfair and deceptive trade practices.

46. Despite the deceptive and misleading labeling and marketing by Defendants, as described above, a careful inspection of the label on these windows reveals that the third party certification gave these windows a DP rating lower than 50.

47. It is customary and generally accepted for consumers, installation specialists, building code inspectors and others to rely on the sticker on the glass to determine the DP rating of the window. In addition, the third party certification sticker is discretely located within the frame of the window and difficult to read, in furtherance of Defendants deceptive and unfair trade practices.

48. Because of the Defendants intentional and wide reaching marketing of these and other windows as having a DP rating of 50, they created a warranty regarding the strength and quality of the window which they have used to and which has had the effect of drawing customers away from the Plaintiff.

49. Defendants' intentional mislabeling of lower-rated windows has successfully and repeatedly deceived developers, homeowners, governmental and municipal users, contractors, subcontractors, building inspectors and insurance companies, among others, into believing that Defendants' lower-rated windows are rated DP 50.

50. Such mislabeling deceives the public and allows Defendants to profit at the expense of the Plaintiff.

9

51. Windows with a rating under DP 50 are not only inferior under the applicable performance standards, but they are less expensive to manufacture and supply hereby giving Defendants a uniform and deceptive competitive advantage.

52. Defendants' mislabeling scheme, as detailed herein, has given them an unfair competitive advantage over Plaintiff because Defendants can charge less for an inferior window that purports to have a DP 50 rating because such windows do not meet DP 50 standard.

53. Defendants' mislabeling is denying consumers the ability to rely on the AAMA, ATSM, NAMI, Keystone and other related codes and standards, which are intended to be a fair and accurate labeling system for certifying the efficiency of windows and is creating unfair competition in the marketplace.

54. By misrepresenting the DP rating, among other potential items, on the window, Defendants have placed in the marketplace windows that do not provide the promised design performance creating a significant life-safety risk and such practice is an unfair and deceptive trade practice.

55. Defendants' intentional mislabeling of its windows has successfully and repeatedly deceived developers, homeowners, governmental and municipal users, contractors, subcontractors, building inspectors and insurance companies, among others, into believing that Defendants' windows have a performance quality of at least DP 50.

56. Such mislabeling deceives the public and allows Defendants to profit at the expense of the Plaintiff.

57. These misrepresentations give Defendants a uniform and deceptive competitive advantage.

58. Defendants' mislabeling scheme, as detailed herein, has given them an unfair competitive advantage over Plaintiff because Defendants can charge less for an inferior window that purports to have performance quality of DP 50.

## FOR A FIRST CAUSE OF ACTION
### (Federal Unfair Competition – Violation of the Lanham Act)

59. Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

60. As described herein, Defendants, in connection with its windows, and possibly other goods or services, has used false or misleading descriptions of facts or false or misleading representations of fact in commerce to describe the performance rating of its windows and such other and further false or misleading representations or descriptions as may be shown through discovery and during the trial of this matter.

61. These false and misleading descriptions and representations as described herein is likely to and has caused confusion, or mistake, or deceived consumers as to the origin, sponsorship, or approval of Defendants windows, by another person.

62. These false and misleading descriptions and representations by Defendants as described herein in commercial advertising and/or promotion of its products, misrepresents the nature, characteristics, and qualities of Defendants' windows.

63. Plaintiff believes that it has been damaged by such false and misleading descriptions and representations by Defendants and that Defendants are liable to Plaintiff in damages by such acts as described herein.

64. Defendants' acts, as alleged above, constitute unfair competition with Plaintiff in violation of the Lanham Act, 15 U.S.C. § 1125(a).

65. Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to damages for Defendants' unfair competition, an accounting of profits made by Defendants on sales of its windows in the Market and recovery of Plaintiff's costs of this action.

66. Defendants' unfair competition with Plaintiff has been willful and wanton for the purpose of deceiving customers and injuring the reputation and goodwill of the Plaintiff.

67. Defendants' acts of unfair competition make this an extenuating case entitling Plaintiff to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and (b) and recover of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

68. Defendants' acts of unfair competition make this an exception case entitling Plaintiff to an award of the defendant's profits pursuant to 15 U.S.C. § 1117(a).

69. Pursuant to 15 U.S.C. § 1116(a), Plaintiff is entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing acts of unfair competition.

### FOR A SECOND CAUSE OF ACTION
**(Injunctive Relief pursuant to 15 U.S.C.S. § 1116)**

70. Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

71. Defendants' acts, as alleged above, constitute unfair competition with Plaintiff in violation of the Lanham Act, 15 U.S.C. § 1125(a).

72. According to the principles of equity and in order to prevent the Defendants from further violations of the Lanham Act and other state and federal statues and common law, Plaintiff seeks an injunction preventing Defendants engaging in the unfair competition and misleading acts as outlined herein.

### FOR A THIRD CAUSE OF ACTION
**(Common Law Unfair Competition)**

73. Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

74. This claim arises out of the same facts as the above claim based on the Lanham Act, is substantially related thereto, and is properly before the Court under principles of supplemental jurisdiction.

75. Defendants' acts of unfair competition entitle Plaintiff to recover damages under the common law of the State of South Carolina.

76. Defendants' acts of unfair competition have been malicious and acalculated to injure Plaintiff.

77. The willful, wanton and malicious nature of Defendants conduct entitle Plaintiff to an award of its reasonable attorneys' fees and punitive damages against Defendants.

**FOR A FOURTH CAUSE OF ACTION**
**(Violation of the South Carolina Unfair Trade**
**Practices Act, S.C. Code Ann. §39-5-10, *et seq.*)**

78. Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

79. This action arises out of the same facts as the above claim for violation of the Lanham Act and is substantially related thereto, therefore, this action is properly before this court under principles of supplemental jurisdiction.

80. Through their conduct, as set forth herein, Defendants have willfully engaged in unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade and commerce, in violation of S.C. Code Ann. §39-5-10, *et seq*.

81. Defendants conduct and practices are capable of repetition, adversely affect the public interest, and have caused Plaintiff to suffer an ascertainable loss of money or property entitling it to the relief permitted by S.C. Code Ann. §39-5-140.

82. As a direct and proximate result of Defendants' misconduct and mislabeling scheme, as alleged above, the Plaintiff and public has been mislead and damaged.

83. As a direct and proximate result of Defendants' misconduct, as alleged herein, Plaintiff has suffered an continues to suffer actual, special and consequential damages including but not limited to loss of sales and loss of profits and other damages pursuant to S.C. Code Ann. §35-5-140.

84. In addition, on account of Defendants willful and knowing, use and employment of unfair or deceptive methods, acts and practices as describe herein Plaintiff is entitled to a trebling of any damage award pursuant to S.C. Code Ann. §35-5-140.

## FOR A FIFTH CAUSE OF ACTION
**(Fraudulent Misrepresentation)**

85. Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

86. As set forth herein, Defendants have made false and misleading descriptions and representations regarding the DP rating and other characteristics of its window.

87. These descriptions and representations are material and Defendants knew of their falsity at the time they were made or Defendants acted with reckless disregard as to the veracity of these descriptions and representations.

88. In making these representations, Defendants intended to sell its products at a lower price than competing products, thus gaining an unfair advantage in the Market.

89. Plaintiff, consumers, inspectors, and others did not have knowledge of the falsity and relied on the truth of the representations.

90. Plaintiff, consumers, inspectors, and others had the right to rely on the descriptions and representations made by the Defendants.

91. As a direct and proximate result of this reliance, Plaintiff has been damaged and has suffered an continues to suffer actual, special and consequential damages including but not limited to loss of sales and loss of profits and other damages.

## FOR A SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation)

92. Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

93. As set forth herein, Defendants have made false and misleading descriptions and representations regarding the DP rating and other characteristics of its window.

94. Defendants had a pecuniary interest in making the false and misleading descriptions and representations, in that Defendants intended to sell its products at a lower price than competing products, thus gaining an unfair advantage in the Market.

95. Defendants owed a duty of care pursuant to its license agreements with NAMI, AAMA, ASME and other third party testing entities to provide truthful and accurate information to Plaintiff, consumers, inspectors, and others.

96. Defendant breached their duty of care by making the false and misleading descriptions and representations.

97. As a direct and proximate result of breach, Plaintiff has been damaged and has suffered an continues to suffer actual, special and consequential damages including but not limited to loss of sales and loss of profits and other damages

WHEREFORE, Plaintiff prays for judgment on all causes of action against the Defendants jointly and severally in an amount to be determined by the jury, together with consequential damages, loss of use, punitive damages, trebled damages, costs of this action, attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

Respectfully submitted,

       YOUNG CLEMENT RIVERS, LLP

By: s/D. Jay Davis
   D. Jay Davis, Jr. (Fed. ID No. 6723)
   Edward D. Buckley, Jr. (Fed. ID No. 1559)
   Christine Kent Toporek (Fed. ID No. 9814)
   Post Office Box 993
   Charleston, SC  29402
   (843) 720-5402

-and-

JUSTIN O'TOOLE LUCEY, P.A.

By: s/Justin Lucey
   Justin Lucey (Fed. ID No. 5613)
   415 Mill Street
   Post Office Box 806
   Mount Pleasant, SC 29465
   (843) 849-8400

**Attorneys for Plaintiff**

April 11, 2011
Charleston, South Carolina

16